UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FISHERIES SURVIVAL FUND, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 16-cv-2409 (TSC) |
| SALLY JEWELL, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

This case involves the Bureau of Ocean Energy Management's ("BOEM") plan to lease to Statoil Wind US, LLC a large nautical area off the coast of New York for the development of a wind energy facility. Plaintiffs brought suit challenging BOEM's alleged failure to properly comply with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.* and the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1331–56, prior to the issuance of the lease to Statoil. Before the court is Plaintiffs' motion for a preliminary injunction to temporarily halt BOEM from proceeding with the final sale of Lease OCS-A 0512. (ECF No. 3). The court granted Statoil's motion to intervene (ECF No. 13), and the court heard oral argument on Plaintiffs' preliminary injunction motion on February 8, 2017.

Upon consideration of the motion and the arguments of counsel at the hearing, and for the reasons stated herein, Plaintiffs' motion for a preliminary injunction is DENIED.

**I.    BACKGROUND**

    **A.  The Parties**

Plaintiffs in this case are nine commercial fishing organizations and businesses—the Fisheries Survival Fund, The Town Dock, SeaFreeze Shoreside, Sea Fresh USA, Rhode Island

Fishermen's Alliance, Garden State Seafood Association, Long Island Commercial Fishing Association, the Fisherman's Dock Co-Operative of Point Pleasant, and the Narragansett Chamber of Commerce—as well as three municipalities—the Borough of Barnegat Light, New Jersey, the Town of Narragansett, Rhode Island, and the City of New Bedford, Massachusetts. The nine commercial and organizational plaintiffs are all involved in the business of fishing for scallops and squid in coastal areas located in the same site as the planned wind farm at issue. (Compl. ¶¶ 4, 6–11, 13, 15). The municipal plaintiffs assert economic and natural resource interests in the planned site. (*Id.* ¶ 12, 14, 15).

Defendant BOEM of the U.S. Department of the Interior administers the OCSLA and oversees the wind facility leasing process at issue in this case. 30 C.F.R. § 585.100. Defendant-Intervenor Statoil is the energy company that provisionally won Lease OCS-A 0512 in BOEM's competitive online auction. (Bull Decl. ¶ 18 (ECF No. 21-1)). Plaintiffs have also sued the Secretary of the Interior in her official capacity. (Compl. ¶ 16).

**B. Statutory & Regulatory Framework**

1. <u>NEPA</u>

Before a federal agency engages in activity that may "significantly affect[] the quality of the human environment," NEPA requires it to prepare "a detailed statement" on "the environmental impact of the proposed action," as well as any potential alternative actions that may be taken. 42 U.S.C. § 4332(2)(c)(i)–(v). The agency must thus take a "hard look" at environmental consequences before moving forward on a major administrative action. *Kleppe v. Sierra Club*, 427 U.S. 390, 410 n.21 (1976). The purpose of this requirement is to ensure "'a fully informed and well-considered decision, not necessarily' the best decision." *Theodore Roosevelt Conserv. P'ship v. Salazar*, 616 F.3d 497, 503 (D.C. Cir. 2010) (quoting *Vermont*

*Yankee Nuclear Power Corp. v. Nat. Resources Def. Council, Inc.*, 435 U.S. 519, 558 (1978)). The statute sets procedural requirements, but does not mandate certain outcomes. *See Robertson v. Method Valley Citizens Council*, 490 U.S. 332, 350 (1989) ("If the adverse environmental effects of the proposed action are adequately identified and evaluated, the agency is not constrained by NEPA from deciding that other values outweigh the environmental costs.").

2. OSCLA

Under the OSCLA, BOEM is authorized to issue leases, easements, or rights-of-way for offshore renewable energy projects. 43 U.S.C. § 1337(p)(1). BOEM must consult with the U.S. Coast Guard and other relevant federal agencies, and must consider several factors, including safety, protection of the environment, conservation of natural resources, and prevention of interference with reasonable uses of the area, including for fishing or navigation. 43 U.S.C. § 1337(p)(1)(C), (4)(A)–(L). Pursuant to these statutory provisions, BOEM has promulgated regulations governing the leasing process and management of offshore renewable energy projects. 30 C.F.R. § 585.100 *et seq.*

**C. BOEM's Leasing Process & Lease OCS-A 0512**

BOEM oversees the development of renewable energy sources on the outer continental shelf. Under its regulations, a private developer may submit an unsolicited proposal to lease any area of the ocean for a wind energy facility. 30 C.F.R. § 585.230. In September 2011, a consortium of energy companies proposed the development of a wind energy facility off the coast of New York, covering approximately 127 square miles of ocean area. (Pl. Ex. C (Project Application and Lease Request); Ex. K (Amended Lease Request)). Pursuant to its regulations, BOEM issued a Request for Interest in January 2013 to determine whether there existed competitive interest in the area. 78 Fed. Reg. 760 (Jan. 4, 2013). After determining that there

was competitive interest, BOEM published a Call to seek nominations from companies interested in leasing the area and to gather public input on site conditions, resources, and existing uses of the lease area.  79 Fed. Reg. 30,643, 30,645 (May 28, 2014).

BOEM then prepared a draft Environmental Assessment ("EA") which considered the impacts associated with issuing a lease and the activity that would follow, including conducting site characterization surveys and installing meteorological towers or buoys for site assessment. The draft EA was published for public comment in June 2016, 81 Fed. Reg. 36,344 (June 6, 2016), and many of the Plaintiffs submitted comments about how a wind facility at the proposed lease location would harm their fishing interests and the marine habitat in that area.  On October 31, 2016, BOEM published both a Final Sale Notice and a Revised EA, which resulted in a Finding of No Significant Impact.  81 Fed. Reg. 75,429, 75,438 (Oct. 31, 2016).  BOEM's EA was limited to assessing the environmental impacts, if any, of pre-construction activity in the lease area, including conducting surveys and installing, operating, and decommissioning meteorological towers or buoys.  *Id.* at 75,438.

In December 2016, BOEM conducted an online auction for the lease, in which Statoil was named the provisional winner, with a bid of approximately $42 million.  (Bull Decl. ¶ 18). This lease has not yet been executed.  Once the lease is executed, Statoil will be granted the exclusive right to conduct site characterization activities and, within one year of the lease issuance, propose a Site Assessment Plan ("SAP").  30 C.F.R. §§ 585.601, 585.605.  BOEM must then approve the SAP, reject it, or approve it with modifications.  30 C.F.R. § 585.613.  If BOEM approves the SAP, Statoil may then engage in site assessment, such as conducting surveys and using towers or buoys to evaluate wind resources, for up to five years.  30 C.F.R. § 585.235(a)(2).  No later than six months before the end of the five year period, Statoil will then

have to propose a Construction and Operations Plan ("COP").  30 C.F.R. § 585.601(b).  The COP includes all data and information to support the plan for the wind facility, as well as proposals for minimizing environmental impacts.  30 C.F.R. § 585.626(b).  Following the COP proposal, BOEM is required to conduct a NEPA analysis, such as an Environmental Impact Statement ("EIS"), to determine whether to approve the COP, reject it, or approve it with modifications.  30 C.F.R. § 585.628(b).

## II.     LEGAL STANDARD

In order to prevail on a motion for a preliminary injunction, the movant must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citations omitted).  In addition to a likelihood of success on the merits, the moving party must demonstrate some injury, as "[t]he basis of injunctive relief in the federal courts has always been irreparable harm."  *Sampson v. Murray*, 415 U.S. 61, 88 (1974) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07 (1959)).  If a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors.  *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).

## III.    DISCUSSION

### A.  Irreparable Harm

The standard for irreparable harm is particularly high in the D.C. Circuit.  Plaintiffs have the "considerable burden" of proving that their purported injuries are "certain, great and actual—

not theoretical—and imminent, creating a clear and present need for extraordinary equitable relief to prevent harm." *Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190, 204 (D.D.C. 2005) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)) (internal quotation marks omitted). In addition, "the certain and immediate harm that a movant alleges must also be truly irreparable in the sense that it is 'beyond remediation.'" *Elec. Privacy Info. Ctr. v. DOJ*, 15 F. Supp. 3d 32, 44 (D.D.C. 2014) (citation omitted). Plaintiffs must provide some evidence of irreparable harm: "the movant [must] substantiate the claim that irreparable injury is likely to occur" and "provide . . . proof indicating that the harm is certain to occur in the near future." *Wis. Gas Co.*, 758 F.2d at 674 (internal quotation marks and citation omitted). This is because "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

To establish irreparable harm under a NEPA claim, Plaintiffs must allege some concrete injury beyond the procedural injury caused by BOEM's alleged failure to comply with NEPA when it conducted its environmental assessment. *Fund for Animals v. Clark*, 27 F. Supp. 2d. 8, 14 (D.D.C. 1998). Plaintiffs articulate three additional harms from the construction of a wind facility in the lease area: (1) loss of the ability to fish in areas that are commercially valuable and significant for the local fishing industry; (2) increased risk of safety hazards for fishermen and other ships attempting to navigate in shipping lanes near the lease area; and (3) damage to their interests in enjoying the habitat for scallops, squid, fish, and other marine species.

To meet the standard for irreparable harm, Plaintiffs must present sufficient evidence that the purported injury is certain, great, actual, imminent, and beyond remediation. Plaintiffs have failed to do so. Most significantly, Plaintiffs have not shown that their purported injuries are

imminent or certain.  The three articulated injuries would result only from the construction and operation of a wind energy facility, but any construction of such a facility is years in the future and subject to further government approval.  As described above, once the lease is executed and issued, up to a year may pass before Statoil first proposes a Site Assessment Plan, which BOEM must evaluate and decide whether to approve.  If the SAP is approved, Statoil may then engage in surveying and wind evaluation, including installing and operating wind buoys or towers.  Statoil would then have another *five years* to propose its construction and operations plan to BOEM, at which point the agency must engage in the lengthy process of preparing an EIS—which includes receiving and responding to public comments—to consider the environmental effects of the actual construction and operation of a wind facility.  If its COP were approved, only then could Statoil begin to construct a wind energy facility in the lease area.  BOEM also points out that the issuance of the lease does not deny fishing access to Plaintiffs (Gov't Opp. at 19), and does not trigger any construction activities that may damage the marine environment.

      Plaintiffs' only argument for why there is an imminent and irreparable harm, despite construction being years away if it happens at all, is that once the lease is issued Statoil will have made a significant financial investment in the development of a wind facility and will have attained some "property rights" in the ocean area, meaning the balance of harms for whether to issue an injunction later in this case will have changed.  In the court's view, this factor does not weigh strongly enough to create an imminent harm sufficient to warrant preliminary injunctive relief.  The court maintains its authority to ultimately enjoin the lease in this litigation if necessary.  Moreover, Statoil's decision to invest in this lease is already made with full awareness that its proposals for a wind facility may be rejected and it may never construct or operate such a facility.  Its decision whether to invest in a development process that is not certain

7

to result in operation of a wind facility does not establish imminent harm for Plaintiffs. For these same reasons, Plaintiffs have not shown that these purported harms are "beyond remediation." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

In sum, the court concludes that Plaintiffs have failed to establish that their purported harms are imminent, concrete, or irreparable to warrant preliminary injunctive relief.[1]

### B. Remaining Factors

The court need not consider the remaining preliminary injunction factors in light of the lack of irreparable harm. *See CityFed Financial Corp.*, 58 F.3d at 747. However, the court will briefly address the three remaining factors, none of which weigh strongly for or against preliminary injunctive relief. With respect to the likelihood of success on their NEPA and OCSLA claims, Plaintiffs offer numerous arguments for why the EA prepared by BOEM is defective and in violation of the agency's statutory and regulatory requirements, including that it failed to analyze the actual construction and operation of a wind facility and further failed to analyze other potential locations for the wind facility. BOEM counters that the proper time to assess environmental impacts of construction is years from now once a COP has been proposed, and that it has no obligation to consider whether a wind energy facility outside of the lease area might have less environmental impact, only whether the specific lease proposal at issue should be approved. The D.C. Circuit's decision in *Public Employees for Environmental Responsibility v. Hopper*, 827 F.3d 1077, 1082–83 (D.C. Cir. 2016) does suggest that the proper time for the agency to consider these environmental impacts may be at the present stage. In that case, the Circuit considered another wind energy facility and found defects with BOEM's environmental

---

[1] Defendants further argue that Plaintiffs lack standing for these same reasons. However, Defendants have not moved to dismiss the case due to a lack of standing, and the court need not consider these arguments in its analysis of the preliminary injunction factors.

analysis. It ordered a new EIS but chose not to set aside the lease. However, in considering this case and other precedents, the court determines that the merits here are not so one-sided as to overcome the lack of clear irreparable harm and justify preliminary relief.

Additionally, as to the balance of equities, both sides present compelling arguments. BOEM asserts that it, and by extension the public, has an interest in the operation of its wind energy leasing program, as well as a financial interest in continuing with the lease transaction. Plaintiffs argue that they have an interest in preserving the status quo to continue pursuing their commercial fishing activity, and that the public interest is best served by ensuring that federal agencies properly comply with legal requirements. This balancing does not favor either side. The court therefore concludes that Plaintiffs have not shown irreparable harm, and none of the remaining factors weigh in their favor either.

IV.   **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction is DENIED.

Date:  February 15, 2017

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge