**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FISHERIES SURVIVAL FUND, *et al.* | No. 1:16-cv-2409 |
| Plaintiff, | Honorable Tanya S. Chutkan |
| vs. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT** |
| RYAN ZINKE, et al. | |
| Defendants, | |
| and | |
| STATOIL WIND US LLC, | |
| Defendant-Intervenor. | |

**INTRODUCTION**

Plaintiffs request that the Court alter or amend its judgment based on power purchase agreements entered into by offshore wind providers and state utilities.  These agreements do not involve the lease at issue in this case, and the federal government is not a party to the agreements.  But even if the agreements did implicate this lease, the motion should be denied because the agreements were issued well after BOEM's final agency action (*i.e.*, its decision to issue the lease) and therefore cannot be considered as a matter of law in this APA case—they are not part of the record and do not meet the narrow standard for admitting extra-record evidence. Further, these agreements are not "new evidence" as they were available to Plaintiffs during summary judgment proceedings.  Plaintiffs could have moved this court to consider the agreements as extra-record evidence and therefore they should be precluded from making such arguments after summary judgment proceedings have concluded and the Court has issued a final judgment.  Finally, the existence of power purchase agreements—to which the federal government is not a party and had no role in approving—has no effect on the Court's ruling that the National Environmental Policy Act ("NEPA") claims in this case are not ripe.

The Court's summary judgment ruling was based on the language of the lease and the applicable regulations, which allow BOEM to preclude development in the lease areas unless and until a construction and operations plan ("COP") is approved.  *See* Sept. 30, 2018 Mem. Op. at 16 (ECF No. 59).  Because such development is precluded, BOEM has not irreversibly and irretrievable committed resources to the project and therefore the NEPA claims are not ripe.  *Id.* The fact that other wind energy companies have entered into power purchase agreements—or that Equinor (formerly known as Statoil) may enter into such agreements in the future—has no bearing BOEM's lease or its regulations and therefore is irrelevant to the legal issue of whether

BOEM has irreversibly and irretrievably committed resources.  Plaintiffs' attempt to revisit their summary judgment arguments through the guise of allegedly new evidence is contrary to applicable law and should be rejected.

## STANDARD FOR A MOTION TO ALTER OR AMEND JUDGMENT

Plaintiffs' motion is brought under Rule 59(e).  *See* Fed. R. Civ. P. 59(e).  "A Rule 59(e) motion 'is discretionary' and need not be granted unless the district court finds that there is an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (quoting *Nat'l Trust for Historic Pres. v. Dep't of State*, 834 F. Supp. 453, 455 (D.D.C. 1993)) (additional citations omitted).  "Rule 59(e) does not provide a vehicle 'to relitigate old matters, or to raise new arguments or present evidence that could have been raised prior to the entry of judgment." *Kline v. Archuleta*, 309 F.R.D. 91, 92 (D.D.C. 2015) (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008), *aff'd sub nom. Kline v. Cobert*, No. 15-5248, 2016 WL 1272945 (D.C. Cir. Feb. 10, 2016).  "[M]otions to amend a judgment under Rule 59(e) are disfavored and should be granted only in extraordinary circumstances." *Kline*, 309 F.R.D. at 92 (citing *Liberty Prop. Trust v. Republic Props. Corp.*, 570 F. Supp. 2d 95, 97-98 (D.D.C. 2008)) (additional citation omitted).

## ARGUMENT

### I.     Plaintiffs' Alleged New Evidence Post-Dates BOEM's Decision and Therefore Cannot Be Considered As a Matter of Law

There is no basis for Plaintiffs' assertion that documents post-dating BOEM's leasing decision should be considered now, either through supplementation of the record or the Court taking judicial notice of the documents.  Judicial review under the Administrative Procedure Act ("APA") is limited to the administrative record, which consists of those materials considered by

the agency at the time it made the challenged decision. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). The Supreme Court and this Circuit have repeatedly emphasized that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Envtl. Defense Fund v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981). Consequently, judicial review is limited "to the administrative record except when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review." *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010) (citations omitted).

Where there has been a showing of bad faith or the record is so bare as to preclude effective judicial review, one of the limited exceptions to record review may be applied. *See Costle*, 657 F.2d at 285; *Commercial Drapery Contractors v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998). If the Court finds that these criteria are met, the record may be supplemented with extra-record evidence if one of three exceptions applies: "(1) if the agency deliberately or negligently excluded documents that may have been adverse to its decision, (2) if background information was needed to determine whether the agency considered all the relevant factors, or (3) if the "agency failed to explain administrative action so as to frustrate judicial review." *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010) (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)) (internal quotation marks omitted). "Reliance on extra-record evidence 'is the exception, not the rule.'" *Am. Petroleum Inst. v. SEC*, 714 F.3d at 1334 (quoting *Theodore Roosevelt Conservation P'ship*, 616 F.3d at 514).

Here, Plaintiffs make no effort to show bad faith or that the record is so bare that effective judicial review was precluded or that any exception for extra-record evidence applies.

Instead, they argue that the Court should consider to records that post-date BOEM's decision. There is no basis for doing so in an APA case because the agency could not have considered those documents in the decision-making process, and the court likewise could not have considered them because they were not part of the administrative record.

There is also no basis for the Court to take judicial notice of the documents. When faced with a request to take judicial notice of a document in an APA case, the court must first determine whether the document either should have been part of the record in the first instance or may be considered under an exception for extra-record documents. *See*, *e.g.*, *Rybachek v. U.S. Envtl. Prot. Agency*, 904 F.2d 1276, 1296 n.25 (9th Cir. 1990) (rejecting Plaintiffs' submission of extra-record materials offered under the auspices of "judicial notice," as the materials did not satisfy any of the exceptions to the rule limiting review of agency action to the record created at the time of the agency's decision); *see also Madison Servs., Inc. v. United States*, 92 Fed. Cl. 120, 130 n.6 (2010); *Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 975-76 (9th Cir. 2006); *see also Murakami v. United States*, 46 Fed. Cl. 731, 739 (2000). Plaintiffs have failed to show that a recognized exception for extra-record evidence applies here. [1]

Moreover, Plaintiffs are incorrect that the Court may consider the documents merely because the Plaintiffs believe them to be relevant. *See* Pls.' Mot. to Alter or Amend Judgment

---

[1] Contrary to Plaintiffs' arguments, the D.C. Circuit does not recognize an exception to record review for documents "to show whether BOEM's decision was correct" or for "NEPA case[s]." Pls. Mot. at 10 (citing *Silver State Land, LLC v. Beaudreau*, 59 F. Supp. 3d 158, 165 n.1, 172 (D.D.C. 2014). *Silver State* referred to *dicta* in *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989), which has been narrowly construed by the D.C. Circuit. *See Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013) ("*Esch* has been given a limited interpretation since it was decided, and at most it may be invoked to challenge gross procedural deficiencies—such as where the administrative record itself is so deficient as to preclude effective review."); *see also Axiom Res. Mgmt. v. United States,* 564 F.3d 1374, 1380–81 (Fed. Cir. 2009).

and Accompanying Mem. of Pts. and Auths. ("Pls. Mot.") at 10 (ECF No. 61) (citing *Banner Health v. Burwell*, 126 F. Supp. 3d 28, 37, 62 (D.D.C. 2015), *aff'd in part and rev'd in part sub nom. Banner Health v. Price*, 867 F.3d 1323 (D.C. Cir. 2017)).  *Banner Health* followed the D.C. Circuit standard and found that taking judicial notice would only be appropriate if an exception to record review applied.  *Banner Health*, 126 F. Supp. 3d at 61-62.

In sum, Plaintiffs have failed to demonstrate that an exception to record review applies that would allow the Court to consider the proffered extra-record documents at this stage or any stage in the litigation, and therefore their motion to alter or amend the judgment based on those documents should be denied.

## II.  Plaintiffs Could Have Made Arguments Regarding Power Purchase Agreements During the Summary Judgment Proceedings

Even if the Court were to consider the extra-record material offered by Plaintiffs, their motion also should be denied because they could have made arguments about the effect of power purchase agreements on BOEM's leasing process during summary judgment proceedings.  *See Kline*, 309 F.R.D. at 92.  Plaintiffs' motion is based on announcements of power purchase agreements in May and June of 2018 and power purchase agreements entered into on July 31, 2018 between energy companies and electricity providers to purchase energy generated by wind energy facilities.  *See* Pls. Mot. at 4-5.  The proffered evidence is not "new" and therefore cannot serve as a basis for a Rule 59(e) motion.

The documents submitted with Plaintiffs' motion were publicly available between two and four months prior to the Court's decision on September 30, 2018 (ECF No. 59).  In fact, Plaintiffs freely admit that the documents that they submitted with their motion were available prior to the Court's summary judgment ruling.  *See* Pls. Mot. at 7 n.8.  They attempt to excuse their failure to submit the documents earlier by arguing that they were waiting for the Court's

resolution of their pending Request for Oral Argument and an unrelated motion for judicial

notice.  *See id.*  But that does not change the fact that the information is not new and that

Plaintiffs could have made the same arguments that it is making now prior to the entry of

judgment.  *See Kline*, 309 F.R.D. at 92 (Rule 59(e) does not permit a litigant to "raise new

arguments or present evidence that could have been raised prior to the entry of judgment.").

Plaintiffs argue that the Court should nonetheless consider this evidence because in an Eighth

Circuit case, the court allowed the plaintiffs to submit information that could have been

submitted prior to judgment in the context of a Rule 60(b) motion because the plaintiffs "lacked

sufficient time to analyze and submit the evidence." Pls. Mot. at 7 n.8 (quoting *Alpern v.

UtiliCorp United*, 84 F.3d 1525, 1536-37 (8th Cir. 1996)).  In *Alpern*, the defendants in a

securities fraud case produced a significant amount of discovery after the deadline, which gave

the plaintiffs little time to review the information prior to the court's summary judgment ruling.

*See* 84 F.3d at 1534-38.  No similar circumstances are present in this case, and Plaintiffs had

ample time to present evidence regarding power purchase agreements prior to the Court's

summary judgment ruling.  Even assuming that the D.C. Circuit would adopt that standard in the

context of Rule 59(e) motion, Plaintiffs have failed to show that they lacked sufficient time to

bring the evidence to the Court's attention prior to the Court's summary judgment ruling—

indeed, they admit that they could have done so.

Further, it was well known before this past summer that a BOEM lessee might enter into

a power purchase agreement to sell wind energy to an electricity provider.  It is a common

practice for wind energy providers to seek to enter into power purchase agreements while

concurrently seeking BOEM's approval for a lease or a COP.  For example, in 2008, Bluewater

Wind executed a power purchase agreement for offshore wind energy before obtaining a BOEM

lease.[2]  Bluewater Wind later acquired a BOEM lease in 2012,[3] but assigned it to another

company in 2016 without ever submitting a COP.[4]  In 2010, Cape Wind obtained a power

purchase agreement,[5] but lost it in early 2015 when it failed to timely start construction of its

planned wind energy project.[6]  And in May 2017, the State of Maryland's Public Service

Commission awarded offshore renewable energy credits ("OREC") to the holders of two nearby

BOEM leases.[7]  The application period for the Maryland award opened on February 25, 2016,

more than nine months before this lawsuit commenced, and was based on a state law enacted in

2013.[8]  Neither recipient of the Maryland awards has submitted a COP to date.  Indeed, even the

bidding process for the Massachusetts power purchase agreements that plaintiffs attached to their

motion commenced with a June 2017 solicitation[9] and was conducted pursuant to a state law

enacted in 2016.[10]

---

[2] http://www.offshorewindhub.org/sites/default/files/resources/delmarva_6-23-2008_bluewaterwindppa.pdf.
[3] https://www.boem.gov/uploadedFiles/BOEM/Renewable_Energy_Program/State_Activities/Executed%20Lease%20OCS-A(1).pdf.
[4] https://www.boem.gov/Assignment-of-Lease-OCS-A-0482/.
[5] http://www.offshorewindhub.org/sites/default/files/resources/madpu_11-22-2010_finalordernationalgridcapewind_5.pdf.
[6] https://www.renewableenergyworld.com/articles/2015/01/cape-wind-in-jeopardy-as-two-utilities-seek-to-terminate-power-purchase-agreements.html.
[7] *See* https://www.psc.state.md.us/wp-content/uploads/Order-No.-88192-Case-No.-9431-Offshore-Wind.pdf (Maryland Order).  These OREC awards are functionally the same as the PPAs awarded to Vineyard Wind in Massachusetts: they set a price at which the developer can sell electricity into the grid, contingent on receiving BOEM approval of its plan.  *Compare, e.g.*, Maryland Order with Pls. Ex. 7; *see also* Maryland Order at Appendix A-2 ("The OREC award is contingent on the positive review and/or approval of the SAP, COP, and NEPA documents by BOEM or the relevant federal agency.").
[8] https://www.psc.state.md.us/wp-content/uploads/Offshore-Wind-Application-Period-opens_02242016.pdf.
[9] https://macleanenergy.com/83c/83c-timeline/.
[10] https://www.mass.gov/files/documents/2017/10/11/220cmr23.pdf.

In sum, the fact that BOEM wind energy lessees have sought, and have entered into, power purchase agreement for the sale of wind energy is not new.  Plaintiffs could have filed a motion asking the Court to supplement the record to present evidence and argument regarding power purchase agreements during summary judgment briefing, but they did not do so. Therefore, their motion to alter or amend the judgment should be denied.  *See Kattan v. Dist. of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993) ("[A] losing party may not use a Rule 59 motion to raise new issues that could have been raised previously.").

### III.   The Existence of Power Purchase Agreements Does Not Alter BOEM's Authority to Preclude Development Until a COP is Approved

Even if the Court considers the power purchase agreements offered by Plaintiffs, those agreements do not alter BOEM's authority to preclude development before a COP is approved and therefore are irrelevant to the Court's ruling that the NEPA claims are not ripe.  None of the power purchase agreements submitted by Plaintiffs involve Equinor, the BOEM lessee in this case.  Moreover, the fact that a BOEM lessee generally may enter into a power purchase agreement does not bear on the Court's legal conclusion that Plaintiffs' NEPA claims challenging BOEM's leasing decision are not ripe.[11]  The Court's ruling that the NEPA claims were not ripe was based on BOEM's regulations and the language of the lease, which preserve BOEM's authority to preclude any construction activities unless and until BOEM approves a COP.  *See* Sept. 30, 2018 Mem. Op. at 16.  The Court considered and rejected Plaintiffs' arguments that the lease only allowed BOEM to condition COP approval, not deny construction, and that issuance of the lease was a critical point in the decision-making process that required a NEPA analysis.  *See id.* at 17-20.  The fact that a BOEM lessee may seek to enter into a power

---

[11] The power purchase agreements also have no bearing on the Court's ruling on the OCSLA claims, and Plaintiffs do not claim that they do.

purchase agreement does not change the Court's analysis because a power purchase agreement is not authorized by BOEM and has no legal effect on a BOEM lease or on BOEM's authority to deny a COP.

BOEM had no involvement in the competitive procurement processes run by Massachusetts, Rhode Island, and Connecticut. *See* Pls.' Exs. 1-12 (demonstrating no BOEM participation in the referenced state procurement processes) (ECF Nos. 61-1 – 61-12). A BOEM lease does not entitle a lessee to obtain a power purchase agreement, and obtaining a power purchase agreement does not exempt a BOEM lessee from any of BOEM's regulatory requirements for the approval of a COP. To the contrary, power purchase agreements are typically contingent on the wind energy developer/lease holder ultimately meeting applicable regulatory requirements to actually construct and operate a power generating facility on the leasehold. If a developer wishes to construct a wind energy facility in order to fulfill the obligations of its power purchase agreement, it must still submit a COP to BOEM—which would then conduct an environmental review under NEPA, potentially prepare an environmental impact statement, and either approve the COP, disapprove it, or approve it with modifications. *See* Defs.' Mem. in Supp. of Summ. J. and in Opp. to Pls.' Mot. for Summ. J. ("Defs. Summ. J. Mem.") at 7-8 (ECF No. 43). With respect to the lease at issue in this case, BOEM has repeatedly made clear that it will indeed prepare an environmental impact statement before approving or denying a COP. Indeed, as with the Maryland OREC discussed above, the power purchase agreements cited by plaintiffs are dependent on the energy company showing that is has "obtained and demonstrated possession of all Permits required for the lawful construction and operation of the Facility." ECF No. 61-12 at 22; *see also id.* at 17-18 (stating that "receipt of all Permits necessary to construct the Facility" constitute a "Critical Milestone" needed for

performance of the contract).  The required permits include approval of a COP.  *See id.* at 66.

Thus, the power purchase agreements are contingent upon a wind energy provider ultimately

obtaining approval from BOEM to construct and operate a wind energy facility.

Further, the existence of a power purchase agreement does not affect BOEM's authority

to approve or deny a COP.  There can be no legitimate dispute that power purchase agreements

do not give lessees the right to build projects on their lease—they are simply a private agreement

to one day in the future sell electricity to utility providers, *if* they actually obtain approval to

construct a wind energy facility.  BOEM has the sole authority to allow or disallow the

construction of such a facility, and the entry of a lessee into a power purchase agreement in no

way curtails BOEM's authority.  *See generally* 43 U.S.C. § 1337(p) (establishing the Department

of the Interior as the exclusive authority for leasing the OCS for offshore wind energy and

approving activities on those leases).  Further, the existence of a power purchase agreement does

not make it more likely that BOEM will approve a COP.  If Equinor submits a COP for BOEM's

approval, BOEM must still consider whether a COP should be approved in light of potential

impacts to the environment and the factors in 43 U.S.C. § 1337(p), including impacts to fisheries.

*See* Defs. Summ. J. Mem. at 3-4, 7-8, 37-44.  Therefore, the existence of power purchase

agreements obtained by other wind energy companies, and the fact that Equinor may at some

point seek to enter into such an agreement, are irrelevant to the Court's ruling that Plaintiffs'

NEPA claims challenging BOEM's leasing decision are not ripe.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to alter or amend judgment should be denied

because it relies on extra-record evidence, offers an argument that could have been made during

the summary judgment proceedings, and, in any event, is immaterial to the Court's judgment.

Respectfully submitted this 13th day of November, 2018,

> JEAN E. WILLIAMS
> Deputy Assistant Attorney General
> Environment & Natural Resources Division
>
> */s/ Luther L. Hajek*_____
> LUTHER L. HAJEK
> Trial Attorney
> U.S. Department of Justice
> Environment & Natural Resources Division
> Natural Resources Section
> 999 18th Street, South Terrace, Suite 370
> Denver, CO 80202
> Tel: (303) 844-1376; Fax: (303) 844-1350
> E-mail: luke.hajek@usdoj.gov
>
> *Counsel for Defendants*

OF COUNSEL:

JOSHUA M. KAPLOWITZ
PEDRO MELÉNDEZ-ARREAGA
United States Department of Interior
Office of the Solicitor
1849 C St. NW
Washington, DC 20240

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of November, 2018, I filed the above pleading with the Court's CM/ECF system, which provided notice of this filing by e-mail to all counsel of record.

/s/ *Luther L. Hajek*
Luther L. Hajek