**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| FISHERIES SURVIVAL FUND, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 16-cv-2409 (TSC) |
| | ) | |
| DAVID BERNHARDT, *et al.*, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| EQUINOR WIND US LLC, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| | ) | |

**Memorandum Opinion**

By Memorandum Opinion and Order dated September 30, 2018, this court found that

Plaintiffs' claims under the National Environmental Policy Act (NEPA) were not ripe.  (ECF No.

59 ("Mem. Op."); ECF No. 60 ("Order").)  Plaintiffs now move this court to reconsider that

finding.  (ECF. No. 61 ("Pls. Mot. to Alter").)  For the reasons stated below, Plaintiffs' motion

will be DENIED.

## I.     BACKGROUND[1]

This case concerns a Bureau of Ocean Energy Management ("BOEM") plan to lease a

nautical area off the coast of New York to Defendant-Intervenor Statoil Wind US, LLC

("Statoil") for development of a wind energy facility.  On December 15 and 16, 2016, BOEM

---

[1]  The court assumes the parties' familiarity with the facts of this case and recites only what is
necessary to resolve the issues now before it.  Additional background information can be found
in the court's September 30, 2018 Memorandum Opinion. (ECF No. 59.)

held a lease auction, which Statoil won with a $42,469,725 bid.  *See* Commercial Lease of

Submerged Lands for Renewable Energy Development on Continental Shelf (NYAR-0046753).

BOEM and Statoil executed the lease on March 15, 2017.  *See* NYAR-0046759.  The lease

grants Statoil the exclusive right to conduct site characterization activities and, within one year

of lease issuance, to propose a Site Assessment Plan.  *See* NYAR-0046753; 30 C.F.R. §§

585.601(a), 585.605.  Upon BOEM's approval of the Plan, Statoil has five years to engage in site

assessment—including conducting surveys and using towers or buoys to evaluate wind

resources—and propose a Construction and Operations Plan ("COP"), *see* 30 C.F.R. §§

585.235(a)(2), 585.601(b), which must include detailed data and information to support the plan

for the wind facility, and proposals for minimizing environmental impact.  *See* 30 C.F.R. §

585.626(b).  BOEM would then conduct "an appropriate NEPA analysis" based on the

information included in the COP, before deciding whether to approve it.  30 C.F.R. § 585.628(b).

Plaintiffs allege, *inter alia*, that this process violated NEPA because BOEM failed to

produce an Environmental Impact Statement (EIS) before issuing the lease.  (ECF No. 1

(Compl.) ¶¶ 106–11.)  This court disagreed, holding that the issuance of the lease did not trigger

an obligation under NEPA to produce an EIS, and thus Plaintiffs' NEPA claims were not ripe.

(Mem. Op. at 14–21.)  Through a motion and three notices of supplemental authority, Plaintiffs

ask this court to revisit that holding.  (*See* Pls. Mot. to Alter; ECF No. 65 (Supp. Authority); ECF

No. 67 (2nd Supp. Authority); ECF No. 70 (3rd Supp. Authority).)

## II.    LEGAL STANDARD

"A Rule 59(e) motion is discretionary and need not be granted unless the district court

finds that there is an intervening change of controlling law, the availability of new evidence, or

the need to correct a clear error or prevent manifest injustice."  *Firestone v. Firestone*, 76 F.3d

1205, 1208 (D.C. Cir. 1996) (internal quotations omitted).  Rule 59(e) does not permit a litigant

to "present evidence that could have been raised prior to the entry of judgment," *Kline v.*

*Archuleta*, 309 F.R.D. 91, 92 (D.D.C. 2015), and "a losing party may not use a Rule 59 motion

to raise new issues that could have been raised previously." *Kattan v. District of Columbia*, 995

F.2d 274, 276 (D.C. Cir. 1993).

### III.    DISCUSSION

Plaintiffs argue that they meet the Rule 59(e) standard because of the "availability of new

evidence." *Firestone,* 76 F.3d at 1208.  They direct the court to allegedly new documents

concerning the continued development of multiple offshore wind projects, including the one at

issue here.  Even assuming the evidence is in fact new, and further assuming that the court could

take notice of it, the evidence does not alter the court's original conclusion that the NEPA claims

are not ripe.

That original conclusion focused on whether issuing the lease to Statoil triggered

BOEM's obligation to produce an EIS.  (*See, e.g.*, ECF No. 48 (Pls. MSJ Reply) at 9–14.)  The

D.C. Circuit has held that an agency does have an obligation to produce an EIS upon initiation of

a project, but only when the agency reaches a "critical stage of a decision which will result in

irreversible and irretrievable commitments of resources." *Ctr. for Biological Diversity v. U.S.*

*Dep't of Interior*, 563 F.3d 466, 480 (D.C. Cir. 2009) (quoting *Wyo. Outdoor Council v. U.S.*

*Forest Serv.*, 165 F. 3d 43, 49 (D.C. Cir. 1999) ("*Wyo. Outdoor Council II"*)).  In cases like this,

involving multiple-stage leasing programs, an agency does not reach this "critical stage" unless

and until it "no longer retain[s] the authority to preclude all surface disturbing activities . . ."

*Wyo. Outdoor Council II*, 165 F.3d at 49 (alteration in original) (quoting *Sierra Club v. Peterson*,

717 F.2d 1409, 1415 (D.C. Cir. 1983)).  Here, this court reviewed the lease and the relevant

regulations and determined that even after issuing the lease, BOEM retained complete authority

to preclude all surface disturbing activities.  (Mem. Op. at 17, 19.)  Accordingly, the court held

that there was no obligation to issue an EIS and thus Plaintiffs' NEPA claims were not ripe.  (*Id.*

at 20–21.)

Plaintiffs now direct the court to four pieces of evidence, but because the evidence does

not bear on BOEM's legal authority to preclude construction, it does not undermine the court's

original holding.  First, Plaintiffs provide evidence that various states and electric distribution

companies have entered into power purchase agreements with offshore wind developers based on

"nothing more than the existence of the developer's lease with BOEM."  (Mot. to Alter at 4.)

According to Plaintiffs, these agreements indicate that "multiple states and utilities are now

staking their energy future and infrastructure needs on the same types of offshore wind energy

leases at issue here."  (*Id.* at 2.)  Plaintiffs argue that the existence of these power purchase

agreements makes it "extremely unlikely that BOEM can retain the unilateral authority to revoke

the leases or preclude wind farm development."  (*Id.* at 8.)  But in making this argument

Plaintiffs are not claiming that the power purchase agreements legally undermine BOEM's

authority to approve or disapprove of future construction.  Therefore, this evidence does not alter

the court's prior judgment.

Second, in their first Notice of Supplemental Authority, Plaintiffs point to a BOEM

Notice announcing that three new leases for other offshore wind energy sites were recently

purchased for approximately $135 million each.  (Supp. Authority at 1– 2.)  Plaintiffs argue that

these high prices for similar leases show that private developers consider development of a

revenue-generating wind farm to be "foreseeable" even at the lease stage.  (*Id.*)  But even if

companies are investing heavily in the possibility of construction, that fact does not undermine the court's conclusion that BOEM nonetheless retains the right to preclude construction.

Third, in a second Notice of Supplemental Authority, Plaintiffs point the court to an announcement by the New York State Energy Research and Development Authority ("NYSERDA") that it awarded an offshore wind contract for the site at issue in this case. (2nd Supp. Authority at 2.) Plaintiffs argue that this evidence reveals the "foreseeable consequences" of issuing the lease. (*Id.* at 2.) But even if that is true, it does not alter BOEM's legal authority to preclude construction even after issuing the lease.

Finally, in a third notice of Supplemental Authority, Plaintiffs provide a BOEM statement from 2019 that "buildout of offshore wind capacity [including in the area relevant to this suit] is reasonably foreseeable." (3rd Supp. Authority at 2.) Plaintiffs characterize this as a concession by BOEM that "build out of offshore wind capacity is a 'reasonably foreseeable' consequence of lease issuance." (*Id.* at 3.) However, BOEM's statement in 2019 that development is foreseeable does not mean that it was foreseeable at the time the lease was issued. Many events that occur after lease issuance, such as the results of evaluations and the development of power purchase agreements, can affect whether development is foreseeable. And even if development was foreseeable when the lease was issued, that fact does not mean that BOEM could not still preclude construction.

In sum, none of the evidence Plaintiffs proffer undermines the fact that BOEM retains authority to preclude construction. At most, the evidence suggests that the lease gave way to various decisions (such as energy reliance and investments) that make BOEM unlikely to exercise its authority to preclude construction. But even if that is true, it is not enough to establish that in issuing the lease Defendants ceded "the authority to preclude all surface

disturbing activities." *Wyo. Outdoor Council II*, 165 F.3d at 49.  As this court previously found,

"the lease sale does not represent the final word on anything, nor does it commit any resources,

even putting aside the question of whether it does so irretrievably."  (Mem. Op. at 20.)  The court

finds no reason to alter or amend that conclusion.


### IV.    CONCLUSION

For the foregoing reasons, the court hereby concludes that Plaintiffs' Motion to Alter or

Amend will be DENIED.  An appropriate order accompanies this memorandum opinion.


Date:  February 14, 2020



*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge